[No. 8320. Department One. January 8, 1910.]

### N. B. BRUCE, *Appellant*, v. M. L. BEVIS, *Respondent*.[1]

BROKERS — COMMISSIONS — CONTRACTS — EVIDENCE—SUFFICIENCY. Where the owner of mortgaged land sold the same and applied to the person to whom he had given the mortgages to substitute a new loan in a larger sum to the vendees, and agreed to pay a commission of $350 for "negotiating" the loan, the owner is liable for the commissions although the mortgagee made the loan himself, he not having acted as a broker on the sale or in any fiduciary capacity, the application for a loan having been made to him to make the loan himself, and the mortgage being given in his name.

WITNESSES—CROSS-EXAMINATION—CONVERSATION. Where upon direct examination plaintiff gave parts of conversations with the defendant at certain times, it was proper on cross-examination to compel him to give all of the conversations at the times referred to.

Appeal from a judgment of the superior court for Spokane county, Canfield, J., entered January 30, 1909, upon findings in favor of the defendant, in an action on contract, after a trial before the court without a jury. Affirmed.

*Harry A. Rhodes*, for appellant.

*Smith & Mack*, for respondent.

MORRIS, J.—Action to recover $370.06, alleged to be due upon a transaction between the parties hereto, whereby respondent made a loan of $7,000 upon mortgage security on certain lands formerly owned by appellant and sold by him, under a contract whereby his vendees were to take up two

[1]Reported in 106 Pac. 129.

mortgages upon the same lands, previously given by appellant to respondent, amounting at the time to $4,315.25, and make a new loan of respondent in the sum of $7,000, the balance representing part of appellant's equity in the land. To the amount due upon the old mortgages, was to be added an advance payment of interest upon the $7,000 loan, aggregating the sum of $4,501.92, which sum was to be retained by respondent, plus the expense of abstract and recording fees, and the balance of the $7,000 turned over to appellant. Appellant received from respondent the sum of $2,147, which, added to the amount then due upon the old loans and the advance payment of interest on the new, aggregated the sum of $6,648.92, leaving a balance of $351.08 which appellant claimed to be due him under his agreement, which, adding interest from the time it was claimed to be due to the commencement of the action, makes the amount $370.06, for which judgment was demanded. Respondent answered, denying any liability as claimed in the complaint, and set forth that appellant agreed to pay him the sum of $350 for making the transfers of the two old mortgages and the new loan to appellant's vendees. This being denied, trial was had upon these issues, and at the conclusion of appellant's case, the court dismissed the action, and plaintiff appeals.

It was conceded that the abstract and recording fees exceeded the sum of $1.08; so that, if the contention of respondent that the $350 was due him for making the loan is sustained by the evidence, the judgment was correct. Upon reading the evidence, we can come to no other conclusion. Appellant, in connection with this feature of the case, gave the following testimony:

"Q. Did you ever at the time of the first conversation with Mr. Bevis, or any subsequent conversation with reference to this $7,000 mortgage, agree with Mr. Bevis to allow him a commission for making this $7,000 loan? A. I agreed to a commission for him to negotiate a loan. Q. Yes, sir; and what was that commission to be? A. $350. Q. $350? A. Yes, sir. Q. That is the same $350, sir, is it not, that you

are now seeking to recover in this case? A. Yes, sir. Q. That you agreed to allow Mr. Bevis? A. Yes, sir; to negotiate it."

We fail to see how the court, after hearing this testimony of the appellant on his cross-examination, could render any other judgment. Appellant takes the position here that respondent was his broker, and that a broker, acting in a fiduciary relation to his principal, acts in fraud of the principal when he himself furnishes the loan, and charges the commission which the principal understood he was to obtain from outside sources. There are no facts in this case to which such a rule of law could apply. The complaint does not set forth such a situation; neither does the evidence disclose it. The only evidence hinting at such a situation is found in the redirect testimony of appellant, as follows:

"Q. I will ask you, Mr. Bruce, whether or not any statement was made to you by Mr. Bevis as to his taking this loan himself? A. No, sir; he stated to me that he negotiated his loans in the East."

Such evidence was of no value in the light of the other evidence in the case showing appellant applied to respondent to make the loan himself, that respondent had himself made the two previous loans, and he was the payee of the note and mortgage in the $7,000 loan, which represented the old loans and the new one then made.

Complaint is made of certain questions asked appellant upon his cross-examination, the purpose of which was to sustain respondent's theory. Appellant, having upon his direct examination given such parts of the conversations with respondent as his counsel deemed material to his contention, could unquestionably on cross-examination be required to give all the conversation between himself and respondent, at the times referred to in his direct examination. The objected questions went no further and were competent.

Judgment affirmed.

Rudkin, C. J., Gose, Chadwick, and Fullerton, JJ., concur.